

**IN THE DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF VIRGINIA**

**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19CR334-3** |
| | **UNDER SEAL** |
| **GEORGE SHAO MIN YU (#3),** | |
| **Defendant.** | |

### DEFENDANT GEORGE YU'S SENTENCING MEMORANDUM

COMES NOW the Defendant George Shao Min Yu, by his counsel, Jeffrey Zimmerman and Shaun Khojayan, and submit this Sentencing Memorandum in support of his sentencing.

## I.   INTRODUCTION

George Shao Min Yu, 54 years old, a naturalized United States citizen with no prior criminal record, is before the Court for sentencing on one charge of conspiracy to commit money laundering in violation of 18 U.S.C.§ 1956(h). The parties and probation department agree that the laundered amount relevant to his advisory guidelines equals approximately $487,320.00.

Mr. Yu is very sorry and apologizes to the Court and the United States for his involvement in this offense. Mr. Yu has been in custody since December 11, 2019. Mr. Yu also apologizes to his children for putting them through this ordeal and is truly remorseful for his conduct. He promises to never be involved in

1

another offense like this again. In 2018, his wife Cindy committed suicide and he was left to care for their three children on his own. The defendant nearly lost his home and his vehicles. He had significant financial struggles while also dealing with family growing family expenses.

Due to their inability to travel to be present for his sentencing, his family prepared a short video in support of their father for Your Honor's consideration entitled "To Your Honor": https://youtu.be/Kbe6Ovs7MaQ. The video contains statements from his older children, Katherine, Jeffrey and Steven, his younger sister, Xiao Li, and his parents, Zhong Mou Yu and Qiu Hua Zhu. They describe Mr. Yu as a good father and son who has remained supportive of them throughout their lives. Family and friends wrote the attached letters in his support as well. *See* Exhibit A.

Given his genuine remorse and lack of criminal history, a long prison sentence, including the cost of that imprisonment, is not needed in this case. The Sentencing Commission's studies point to the significantly low risk of recidivism for someone like Mr. Yu considering his age, and his Criminal History Category I.

Based on his personal history and characteristics and the factors in 18 U.S.C. § 3553(a), a sentence of 12 months and one day of custody, a $100 penalty assessment and 3 years of supervised release would be sufficient in this case.

## II.   SENTENCING FACTORS

Title 18 U.S.C. § 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide

the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement ... issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in § 3553(a)(2). In making this determination, the district court may not presume that a guideline sentence is the correct one. *Nelson v. United States*, 129 S.Ct. 890, 892 (2009) (per curium). The court is also free to discount the guideline's recommendation for policy reasons particularly where the Sentencing Commission did not, in adopting the particular guideline, fulfill its "characteristic institutional role" of acting based on study, expertise, empirical data, or national experience. *See Kimbrough v. United States*, 552 U.S. 85, 109 (2007). Ultimately, the district court must make an independent determination as to the appropriate sentence, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49-50 (2007).

"Sentencing, that is to say punishment, is perhaps the most difficult task of a trial court judge." Jack B. Weinstein, *Does Religion Have a Role in Criminal Sentencing?*, 23 Touro L. Rev. 539, 539 (2007). While there are many competing considerations in every sentencing decision, an understanding of "the diverse

3

frailties of humankind" is crucial. *See Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (plurality opinion). Sentencing requires a "generosity of spirit, that compassion which causes one to know what it is like to be in trouble and in pain." Guido Calabresi, *What Makes a Judge Great: To A. Leon Higginbotham, Jr.*, 142 U. Pa. L. Rev. 513, 513 (1993).

## III.   DEFENDANT'S POSITION ON SENTENCING FACTORS

### A.   THE NATURE OF THE OFFENSE

Mr. Yu helped launder approximately $487,320.00 in illicit drug proceeds. He had less of a role than the other individuals in the indictment. This amount attributed to Mr. Yu is much less than the $4,326,660.00 attributed to Xueyong Wu, whom this Court sentenced to 60 months in custody.

### B.   THE DEFENDANT'S HISTORY AND CHARACTERISTICS

George Shao Min Yu was born in Canton, China in 1966 to Zhong Mou Yu and Qiu Hua Zhu. He has two siblings, Xiao Li Yu, age 53, and Siu Wai Yu, age 49. Mr. Yu recalls a simple life growing up. His father worked for the government and his mother grew crops in the fields. Mr. Yu's parents worked long hours to financially support their three children limiting his time with them. In 1984 he immigrated to Mexico for work but while there he experienced a language barrier and had difficulties speaking their native language.

Mr. Yu then came to the United States in 1988 and became a citizen in 1996. In these last 30 years, he has worked for and co-owned several restaurants including the Garden Cafe and Tasty Garden.

In 1992, Mr. Yu married Cindy Le. Their union produced three children: Katherine Yu, age 26, Jeffrey Yu, age 22 and Steven Yu, age 19. In May 2018 Cindy Le committed suicide after suffering from mental health issues. Her death left an overwhelming void and grief in Mr. Yu's and their children's lives. Mr. Yu and his children suffered an unspeakable heartache. Mr. Yu felt alone and

consumed by guilt.  Mr. Yu did not receive any grief counseling or psychotherapy following his ex-wife's sudden death.

Mr. Yu now has a loving relationship with Jing Yi ("Vanessa") Li. Ms. Li and Mr. Yu have two young children together, Franky and Kingston. Mr. Yu's mother best describes Mr. Yu's relationship with Kingston:

> His youngest child, Kingston, is very dependent on his father. When Kingston was born, he was put into an incubator. My grandson would not let the nurse feed him, so George went to the hospital every day to feed the baby until he was discharged. Even after my grandson returned home, George changed his diapers, fed, bathed, and put him to sleep. My grandson, who is almost 4 years old, has to see a speech therapist because he still isn't able to speak in full sentences yet. But my son was practicing with him at home every day. Now and then, Kingston will stand by the window next to the door to watch and wait for his father.

Each of Mr. Yu's older children has either graduated from college or is attending university currently. *See* Video Statement to Your Honor: https://youtu.be/Kbe6Ovs7MaQ. The attached pictures reflect the life history of Mr. Yu and his family. *See* Exhibit B. Mr. Yu's family describes him as a loving person who would do anything for his family.  His family describes him as a sincere, hard worker who is committed to his family. The stress and frustration associated with his actions and this case have been a tremendous burden for him and caused him to reflect every day and better himself.

Upon his release, Mr. Yu plans to spend more time with his children and parents to make amends and work as a contractor in small home improvement projects. He sincerely regrets all of his actions that bring him before the Court.

## C.    THE ADVISORY SENTENCING GUIDELINES

The defense has no objections to the presentence report and agrees with the preliminary calculation of the advisory guidelines.

### 1.    Defendant's Recommended Additional Departures and Variances

As allowed by the plea agreement, Mr. Yu would respectfully request the following downward departures and variances under the advisory guidelines. These same circumstances mitigate for a lower sentence under the 18 U.S.C. § 3553(a) factors as well.

#### a.    Defendant's Difficult Upbringing, Family Circumstances, Trauma of his Wife's sudden death and His Good Deeds

In 1988, Mr. Yu moved to the United States and tried to learn a new language and adjust to a new environment. He was later married to Cindy Le and became the father to two sons and a daughter. However, tragically, in 2018, Ms. Le committed suicide. He then had significant financial struggles from which he had difficulty completely recovering. He also tried to maintain his children and keep his own mental health intact. It was important to maintain his children's social activities and prevent feelings of depression, and anxiety.  His care was an essential component to his children's caretaking.

Evidence about the defendant's background is relevant to reduce his sentence because of the belief "long held by this society, that the defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional or mental problems may be less culpable than defendants who have no such excuse." *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989). *See also United States v. Nava-Sotelo*, 232 F. Supp. 2d 1269 (D. N.M. 2002), *rev'd on other grounds*, 354 F.3d 1202 (10th Cir. 2003) (defendant convicted of assault obtained six-level downward departure based on a "combination of exceptional mitigating factors, including family circumstances, incomplete duress, lesser harms, community support, and

6

civic, charitable and public support."); *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (in $500,000 embezzlement case, the district court may consider family circumstances and other factors to depart 8 levels under 3553(a) analysis). Thus, the Court should reduce Mr. Yu's sentence based on his disadvantaged background and the trauma that he and his family have undergone.

As described in the attached letters from his family and friends, Mr. Yu has been charitable to several people in his life including helping friends in need, providing them food and employment. Such good deeds are not common in today's society and a reduction based on these good deeds is appropriate. *See United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (*en banc*) (where defendant convicted of tax evasion of $225,000, court's sentence to probation with one year home detention was not unreasonable in part because of defendants charitable activities and good deeds).

"[S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'" *United States v. Adelson*, 441 F. Supp.2d 506, 513-14 (SDNY 2006) (securities fraud case, where guidelines call for life sentence, court imposed a 42 months sentence in part because of the defendant's past good deeds.).

### b.    Mr. Yu's Substantial Work History

Mr. Yu has a long work history that began when he was approximately 15 years old when he immigrated to Mexico and worked in restaurants.  His work in restaurants continued in the United States when he immigrated here in 1988. He

7

owned, operated and sold several restaurants since 1993. A reduction or downward departure and variance are appropriate on this factor as well. *See United States v. Alba*, 933 F.2d 1117 (2nd Cir. 1991) (long-standing employment at two jobs); *United States v. Big Crow*, 898 F.2d 1326, 1331-32 (8th Cir. 1990) (excellent employment record); *United States v. Ruff*, 535 F.3d 999. 1001 (9th Cir. 2008) (where defendant pled guilty to embezzling $650,000 from non-profit organization over the course of three years, and where guidelines called for a 30-37 months sentence, defendant's sentence of one day in jail and three years of supervised release on the condition that the defendant spend one year in a community treatment center to go to work and obtain counseling was affirmed and not unreasonable in part because of defendant's "history of strong employment").

    **c.**    **An Extended Incarceration for Mr. Yu at 54 Years Old Is Unnecessary for Him and Society and, per the DOJ, is Detrimental to his Life Expectancy**

The DOJ's own study suggests that based on Mr. Yu's older age, a lengthy sentence of imprisonment would be particularly detrimental. A study commissioned by the DOJ's National Institute of Corrections concluded that imprisonment is especially problematic for older inmates like Mr. Yu. *See* U.S. Department of Justice, National Institute of Corrections, *Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*, (2004) (found at https://info.nicic.gov/nicrp/system/files/018735.pdf). The majority of correctional institutions studied considered a person over 50 as elderly for incarceration purposes because:

> While 50 may seem young to be classified as elderly in the free world, several important factors seem to *speed the aging process* for those in prison. These factors include the amount of *stress experienced by new inmates* trying to survive the prison experience unharmed; efforts to avoid

confrontations with correctional staff and fellow inmates; *financial stress related to inmates' legal, family, and personal circumstances*; withdrawal from chronic substance abuse; and lack of access to adequate medical care prior to incarceration. All contribute to inmate stress, which, in turn, accelerates the aging process.

*Id.* at 8-9 (emphasis added).

The report notes that offenders who had not been to prison before are "easy prey for more experienced predatory inmates." *Id.* at 10. "[M]anagement problems with elderly inmates...are intensified in the prison setting and include: vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible physical environment." *Id.* at 9-10. This study noted that older inmates are uniquely vulnerable to abuse and predation, that they experience difficulty in establishing social relationships, that they often need special physical accommodations in a relatively inflexible physical environment, and that many need special programs in a setting where special privileges are disdained. *Id.* at 11. The study found that older offenders who have not been to prison before "are frequently severely maladjusted and especially at risk for suicide, explosiveness, and other manifestations of mental disorder." *Id.* Moreover, "[s]ince their behaviors are not well tolerated by other inmates, their victimization potential is high." *Id.*

"BOP institutions lack appropriate staffing levels to address the needs of an aging inmate population and provide limited training for this purpose." U.S. Justice Dept. Report (Revised February 2016), *The Impact of An Aging Prisoner Population on the Bureau of Prisons, Executive Summary* (Found at https://oig.justice.gov/reports/2015/e1505.pdf).

9

The Second Circuit has recognized that "we do know that, as a statistical matter, the life expectancy of an incarcerated person drops significantly for each year of incarceration." *United States v. Jenkins*, 854 F.3d 181, 197 n.2 (2nd Cir. 2017) (citing Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003*, 103 Am. J. of Pub. Health 523, 526 (2013)).

This is not to say that older defendants should not be held accountable simply because of their age and other issues, but correctional institutions and sentencing courts have seen the negative impact of incarceration on people like Mr. Yu. Moreover, as individuals grow older, their "risk for severe illness from COVID-19 increases." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. According to the Centers for Disease Control and Prevention (CDC), the rate of hospitalization for people in their 50s and early 60s are four times higher compared to individuals who are 18 to 29 years old. *See* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html. The rate of death for someone of Mr. Yu's in age group is thirty times higher. *See id.*

This risk is greatly compounded by the fact that COVID-19 has spread rapidly in the Federal Bureau of Prison, where inmates are unable to practice social distancing. One study found that incarcerated individuals are three times more likely to die and more than five times more likely to become infected than the general population. Justin Carissimo, *Inmates are 5 times more likely to get coronavirus than the general population, study says.* CBS NEWS (July 11, 2020). https://www.cbsnews.com/news/coronavirus-prison-inmates-more-likely-to-get-infected-study-says/.

### d.    Mr. Yu is Very Unlikely to Re-Offend, Per the Sentencing Commission's Study on Recidivists

The likelihood that defendant "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence." *Pepper v. United States*, 131 S.Ct. 1229, 1242 (2011). Here, there is a very low risk of recidivism given the harsh lesson Mr. Yu has already learned, especially in light of his age. *See, e.g., United States v. Smith*, 275 F. App'x 184, 187 (4th Cir. 2008) (affirming 54 months downward variance in part because of low risk of recidivism); *United States v. Nellum*, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (in drug distribution case by a 57 year old defendant, a 60 months reduction in sentence based on lower recidivism rates under § 3553(a)(2)).

Statistical data from a study commissioned by the United States Sentencing Commission show that "[r]ecidivism rates decline relatively consistently as age increases." U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 (found at https://www.ussc.gov/sites /default/files/pdf/research-and-publications/research-publications/2004/200405_ Recidivism _Criminal_History.pdf).

The Sentencing Commission's study states that a defendant over the age of 50 in criminal history category I has a 6.2 percent likelihood of recidivating. *Id.* at Ex. 9.

The Sentencing Commission's study further shows that a defendant like Mr. Yu, who is over 50, with a work history and in a committed relationship the rates of recidivism drop even more. *Id.* at 12. And a defendant who receives a sentence of other than straight prison, including alternatives to prison such as home detention, has a lower recidivism rate as well. *Id.* at 13.

Mr. Yu has been personally and financially punished as a result of his illegal conduct and there is no reason to believe that a sentence of many years in prison is

11

necessary to prevent him from committing further crimes. Based on the Sentencing Commission's studies and Mr. Yu's characteristics, he poses no realistic future risk to the public of reoffending.

The Court has the authority and discretion to impose a wide range of alternatives to the lengthy term of incarceration contemplated by the Guidelines. *See* 18 U.S.C. §§ 3553(a)(3) and 3561(a)(1). Thus, based on Sentencing Commission's studies and Mr. Yu's characteristics, a significant reduction in his sentence and inclusion of an alternative to prison would be warranted and requested.

## IV.   CONCLUSION

Therefore, based on the foregoing, the defense for Mr. Yu requests a sentence of 12 months and one day in custody. The defense also asks the Court to:

1) Recommend to the BOP that he be allowed to participate in the RDAP program (to address his alcohol use); and

2) Recommend he be designated to the Prison Camp at FCI Florence to be closer to his family.

Respectfully Submitted,
GEORGE SHAO MIN YU
By Counsel

/s/

SHAUN KHOJAYAN
Law Offices of Shaun Khojayan & Associates P.L.C.
515 S. Flower St., 19th Floor
Los Angeles, CA 90071
Tel.: (310) 274-6111. Fax: (310) 274-6211
shaun@khojayan.com
*Admitted Pro Hac Vice*

12

_/s/_

JEFFREY D. ZIMMERMAN
VA Bar #38858
Jeffrey Zimmerman, PLLC
108 N. Alfred St.
Alexandria, VA 22314
Tel: (703) 548-8911  Fax (703) 548-8935
zimpacer@gmail.com
*Local Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of October 2020, a true and accurate copy of the foregoing was served on David Peters and Mike Ben'Ary, Assistant United States Attorneys, 2100 Jamieson Ave, Alexandria, Virginia, 22314.

_/s/_

JEFFREY D. ZIMMERMAN

13

# EXHIBIT A

March 11, 2020

Dear Judge Brinkema,

My name is Aki Bao and I am a travel agent. I have been friends with George for 22 years. He is truly a generous and thoughtful person. He is a person who is liked by everyone around him because of his friendly personality and lovable traits.

I met him as my client and he soon became my good friend. Even though we had known each other for so long, he acts like a gentleman and respects my boundaries. I always feel safe and comfortable when I am with him. He is such a good friend; for example, one time when my car's battery was leaking, and my car had stopped running late at night. I was very afraid at that time, but I knew to call George immediately without hesitation. Around 10 p.m., George came to my rescue. He came right away and helped me push my car to a safe place. He then called some of his friends to start my car. Unfortunately, it wouldn't start but the next day he helped me called AAA and towed it to the auto repair shop, and I didn't have to worry. He is such a nice man; he didn't even complain that it was late at night or that he had to take care of his kids; he just provided help and assistance immediately. During a night like that, I really trusted him without any doubt. As proof, AAA has record of this event.

I am unaware of the specific details involving George's situation; however, I do know for certain that this case has placed a huge burden on him. He is very exhausted all the time, and always depressed. George was an optimistic, joyful, and helpful person. He cares about his family and his job very much. George is a persevering individual who is responsible and very dedicated to his career in the restaurant industry. On the contrary, many other people often complain about their jobs and show no devotion to their career. But George loves his job at the restaurant and the people he works with, and he never fails to display that love.

George is a kind person who loves his family and friends tremendously. He would never hurt the restaurant and the people he cares about. I believe that George has contributed and played a big role in helping his community. George is also a loving father, kind friend, caring man, and a fantastic coworker. His family is in a great deal of stress because of the trial. Please have mercy on George Yu's sentencing.

Yours Sincerely,

Aki Bao

March 28, 2020

Dear Judge Brinkema,

My name is Dongliang Huang. I am one of George Yu's friend. George and I have known each other for more than ten years. We are from the same city in China, and I know him very well. George is not only my friend, but he is also my teacher and supporter. He has been one of my biggest role models and helped me tremendously on my path in life.

Many years ago, I was just an ordinary employee of his restaurant. George was the one who helped me by giving me a lot of work opportunities, which allowed me to gradually adapt to life in the United States and has made my life so much easier and better. When working with George, I have never seen him show anything but kindness to his employees at work. Every time an employee did something wrong, he patiently taught them, instead of scolding them. All our employees often remarked that they have never met such a good boss. If someone was ever in need, he would be quick to provide help and guidance. This is a well-known trait about George. I have seen some people taking advantage of him many times, but he helped them regardless without complaint.

From my observations, he is a generous person who is willing to give his all to anyone in need. I have never really met such a kind and good man like him. If you ask me if he has any flaws, I will say that he is too soft-hearted, compassionate and holds high beliefs in people, and is never wary of others. For example, when I got married and bought a house a few years ago, I did not have enough money to pay the down payment at that time. I asked to borrow money from him, but he did not have that much money to lend to me, and he felt embarrassed because he couldn't help me. However, he still strived to help me by asking all of his friends until one figured out a way to get me a loan. I am extremely thankful for everything he has done for me. Without him, I wouldn't have this place called home that I have today with my family.

I know he made a big mistake this time, but I also know he deeply regrets it. I plead the judge to give him a chance to continue spreading his helpfulness and kindness and for him to return to his family as soon as possible. His parents and his children really need him, especially during this pandemic. Thank you very much for taking the time in reading this letter.

Sincerely,

Dongliang Huang

March 27, 2020

Dear Judge Brinkema,

My name is Qiuhua Zhu. I am the mother of George Shao Min Yu. With tears in my eyes, I write this pleading letter for my son.

George was born in a large family in China. He has been loved by his grandparents, parents, and family since childhood. He is hardworking, helpful, and good at making friends. George is very filial to his parents and elders. While living in China, we were not financially stable. However, George went abroad to make a living alone. No matter how difficult life was for him, he would make sure to send money back to us to feed and support our family. He never asked his family for anything in return. George now has two elderly parents and two young children at home who really need his care. A couple years ago, my husband broke his hip and now has difficulty walking. George often takes him to the doctor for a checkup and for medication. He is never hesitant to accompany and take care of the elderly or anyone in need.

George is a caring and devoted father and loves each of his children dearly. However, I worry and fear that George's absence will harm the physical and mental health of his young children without their father. His youngest child, Kingston, is very dependent on his father. When Kingston was born, he was put into an incubator. My grandson would not let the nurse feed him, so George went to the hospital every day to feed the baby until he was discharged. Even after my grandson returned home, George changed his diapers, fed, bathed, and put him to sleep. My grandson, who is almost 4 years old, has to see a speech therapist because he still isn't able to speak in full sentences yet. But my son was practicing with him at home every day. Now and then, Kingston will stand by the window next to the door to watch and wait for his father, but it hurts me to know that Kingston can't see his father any time soon.

Dear Judge, I cannot express to you the pain and sadness of these past months waiting for my son to return home soon. I sincerely ask the benevolent judge to reduce his sentence as much as possible. He has deeply regretted his actions. Please let him come home earlier to take care of his parents, young children, and the rest of his family. Thank you very much.

Respectfully,

Qiuhua Zhu

March 16, 2020


Katherine Yu
10650 Hallwood Dr.
Temple City, CA 91780


Honorable Judge Leonie Brinkema
United States District Judge
401 Courthouse Square
Alexandria, VA 22314

RE: George Yu

Dear Judge Brinkema,

I am writing this letter on behalf of my dad who is presently before you on criminal charges and is due to be sentenced shortly. My name is Katherine Yu, and I am the eldest child of George Yu's five children. I graduated with honors from the University of Southern California with a B.A. in Psychology, and recently started my own small business selling healthy, vegan, and sugar- free cakes and cookies at farmers markets.

The person who actually inspired me to start my own business is my dad. When my dad was merely 14 years old, he set up his own small booth on the streets of his hometown in Guangzhou selling cans of soda to support his parents and grandparents. At the age of 22, my dad immigrated to America by himself, without knowing any English, and worked as a waiter for several years. He took the opportunity to open his own business after noticing the lack of Chinese restaurants that served authentic food he enjoyed eating. I admired my dad's work ethic because he set the example of living the American Dream. He worked nonstop to build his dream that started with just a simple idea. With his ambition and perseverance, he created numerous jobs for the community and even provided my mom's three brothers with jobs at his restaurant.

My dad never took a day off of work, and he still remembered to spend time with his family because they remained a priority to him. In middle school, I remember often waking up my dad at 7 a.m. to take me to school when my mom could not muster the energy to. With bed hair and unbrushed teeth, my dad would happily drive me to school without ever complaining. Before dropping me off, he would hand me a couple dollars for lunch even though I packed my own food because he worried that I didn't pack enough for myself to eat. Every birthday and Christmas, my dad would purchase the latest technological devices for me and my siblings even

though we would tell him he didn't have to buy them for us numerous times. Reflecting back, I realized my dad wanted his children to live a comfortable life by providing us with what he didn't have, and buying us gifts was one of the many ways he showed his love for us since he was always working.

Throughout my childhood, I saw my dad befriending everyone around him. Every single time my brothers and I would eat out with my dad, we always ran into his friends from work, old acquaintances, or mutual friends he knew. My dad would introduce us to his friends and their kids, and I remember his friends once asking my dad how he raised such well-behaved and well-mannered kids. His friends' comment made him smile so big, you couldn't see his eyes. The days when my dad came home early from work, I would see him, with a genuine and caring smile, asking our neighbors and gardener how they were doing outside on our front yard. My dad actually still keeps in touch with our former gardener from more than 12 years ago. He informed me that when he visited our former gardener, who is now 90 years old, there was a nurse who was taking care of him because the gardener does not have any other family. I was extremely surprised when my dad first told me because I didn't know he developed such a close relationship with our former gardener. It also reminded me how kind-hearted my dad is.

I lived with my dad until I graduated high school, which was when he and my mom divorced. When my parents separated, I perceived my brothers and I as the problem. I thought he didn't love us anymore. However, I was wrong. My dad continued to provide care for us even after he moved out of our house. He would occasionally drop off fresh sandwich rolls and pastries from our favorite local bakery, J.J. Bakery. Every single week, my dad would take me and my brothers out to eat pizza or sushi and ask us what was new in our lives. When my brothers and I had a music concert for school, he always came to see us perform. My dad was so proud of us receiving the education he never received that he made sure to attend all our promotions and graduations. He has never once yelled or hit us, and always had a calm demeanor that I truly found admirable over the years.

On the day my mom suddenly died in 2018, my dad was the only family member who immediately rushed over to our house to make sure that we had support. Even though my mom has six other siblings, they did not care to help plan my mom's funeral and rarely inquired about our well-beings. I am extremely grateful for my dad for making the planning process easier on me as I was grieving her death. This included visiting her burial site at Rose Hills, helping me choose the most fitting memorial plaque and casket for my mom, and finding Buddhist monks to guide a chant during her ceremony. The weeks following up to her funeral, my dad came over to our house every night to ensure my youngest brother, Steven, was eating and doing fine. When my brother and I were working, my dad cooked dinner for Steven because he worried that Steven would not eat. Without my dad, I sincerely would not have been able to provide the ceremony my mom deserved or be the strong sister my younger brothers needed during the grievance.

To this day, my dad is still the same caring and big hearted person he has been when I was younger. My dad still brings us food, such as meat he marinates himself, avocados he grows, and herbal chicken soup to strengthen our immune systems. This period of time has been difficult for me and my brothers to handle because we lost our mom just recently and are still mourning her death. My dad has been one of our biggest supporters in everything we do. Jeffrey, my younger brother, is expected to graduate from San Francisco State University with a Bachelor's degree in Biology next year to pursue his dreams in becoming a veterinarian. It will be heartbreaking to not have our mom at his graduation, and it will be even more saddening for us to not have our dad in the crowd cheering for my brother as well. My dad is the glue that holds the whole family together. Several times a month, my dad takes the time to have the whole family, including my grandparents, to eat lunch at their favorite restaurant or have a pleasant family dinner at my aunt's house. The house is usually not only filled with several plates of hearty home- cooked meals, but also filled with smiles and laughter. However, with my dad being absent, there have been fewer family dinners, with my grandparents and aunts finding it difficult to eat without him around.

Your honor, I pray that you will give a heartfelt consideration on my dad's sentencing and that you take into consideration the kind-hearted person my dad has been and continues to be. My dad certainly understands that he has done wrong and constantly expresses his regret from his past actions. Thank you in advance for all your time and for your consideration.

Respectfully yours,

Katherine Yu

April 2, 2020

Dear Judge Brinkema,

My name is Xiaocha Zhong. I am George Yu's friend and have known him for 7 years now. In 2013, I immigrated to the United States with my husband and cousin, while pregnant with my second child. We rented a small apartment located above George's restaurant and immediately became regulars. Despite how George's restaurant was popular among the local Chinese community, we found it very comfortable to dine there because of his hospitality. When we first met George at his restaurant, we thought he was extremely caring and a respectable manager. He was always polite and friendly to not only his customers, but also to his employees. We eventually became very good friends with George.

My husband often travels back and forth to China for work. Before he had left, my husband asked George if he could look after me while he was out of the country. George did not hesitate at all and promised that he would look out for me. During these times, he would often ask me if I needed groceries or food. Since my cousin and I did not own a vehicle, we felt guilty accepting George's sincerity when he wanted to drive us to get groceries or food. Furthermore, my cousin would always try to give George money for gas, but George would always refuse the money saying it was a small matter and that he was helping out as a friend.

I recall one specific time when my cousin and I ran into complications with our living situation. The apartment's landlord had changed, and he came to us stating we had to immediately move out. Since we couldn't get in touch with the management, we were left confused and frustrated. I recall feeling scared since my husband was not with me during this ordeal. Being pregnant and unable to speak English well, I felt helpless. My cousin couldn't speak English either so I contacted the only other person who I thought could help us out. I contacted George, and he hurried over to us to sort out the situation. George was able to figure out that the new landlord was trying to harass us so he told him that what he was doing is illegal and will report him to the police. After the landlord left, George helped me contact the management company to further alleviate our worries. During this time of need, we felt extremely grateful that he was there to aid us and prevent us from being kicked out onto the streets.

My husband and I recently learned about George's current situation. We were extremely shocked and saddened about this news because we remember George as one of the nicest people we have ever met in America. We have never forgotten what he has done for us and our healthy, second child. Your honor, despite not knowing more details about his case, I plead that you reduce his sentence. A man like George must have been taken advantage of due to his nice and helpful personality. Please allow him to return to society so he can continue having a positive impact on his family and neighbors.

Sincerely,

Xiaocha Zhong

# EXHIBIT B







My dad and his relatives paying their respects to their ancestors









2020 OCT -5  P 12: 12

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA