IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GEORGE SHAO MIN YU,<br><br>Defendant. | No. 1:19-CR-334 (LMB)<br><br>Sentencing Date: October 20, 2020 |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The United States of America, through undersigned counsel, in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual (USSG), § 6A1.2 (2018), files this Position of the United States With Respect to Sentencing in the instant case. The United States has reviewed the Presentence Report and its Addendum of October 1, 2020, and concurs with the findings of the Probation Office. The defendant's resulting guideline range is therefore 70-87 months. The United States respectfully submits that a sentence of 87 months is reasonable and appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a). However, if this Court decides to give a variant sentence, the United States submits that it should be no less than 60 months in order to avoid unwarranted sentencing disparities.

Further, the United States agrees that the defendant has assisted authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This one-level decrease has

1

already been taken into account by the Probation Office in its guideline calculations and is reflected in paragraph 49 of the Presentence Report.

I.    Factual and Procedural Background

International cocaine trafficking has but one purpose: to enrich drug-dealers and their co-conspirators. The United States is the world's largest drug market, making the calculus for international drug traffickers simple: sell as much as possible in the United States. But that is only the first step to unjust enrichment. Once the drugs are sold, the cash those sales generate must be remitted across the border. Money launderers, such as the defendant fill this critical need.

Starting in at least 2016, the defendant worked with a confederation of individuals to help foreign drug trafficking organizations (DTOs) launder their United States-based proceeds through domestic and international financial institutions and businesses. This process, known colloquially as "trade-based money laundering," spans the globe and enables the activities of some of the world's most notorious and violent criminal organizations, including Mexican drug cartels. The defendant and his conspirators earned commissions from DTOs based on the amount of money involved in each transaction. In its most basic form, the goal of the defendant and his conspirators was to convert United States dollars to Chinese currency, known as RMB, so it could be used as part of a broader trade-based money laundering cycle.

Between February and March 2016, the defendant made at least four trips between Los Angeles and Chicago to transport drug proceeds at the direction of co-defendant Xizhi Li. Specifically, the defendant purchased one-way flights from Los Angeles to Chicago. Once in Chicago he rented vehicles and drove to a parking lot in suburban Chicago to obtain bulk cash,

2

which was the proceeds of drug sales. He then drove that cash from Chicago to Los Angeles, where it would be further digested in the trade-based money laundering process. On March 11, 2016, the defendant was stopped in Seward County, Nebraska, with $340,000 of drug cash. He was transporting this money back to Los Angeles so it could be laundered by Xizhi Li and his associates. Xizhi Li forced the defendant to repay the debt caused by the seizure of the money. Thus, the defendant recruited his girlfriend and business partner to write checks to Xizhi Li's alias, "Francisco Ley Tan," to repay a portion of the seized funds. Li deposited this money into his Miami-based BBVA brokerage account, which he held in the fraudulent "Francisco Ley Tan" identity.

The government charged the defendant in a three-count indictment on November 7, 2019, with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841 and 846; conspiracy to distribute five kilograms or more of cocaine, knowing and intending that it will be unlawfully imported into the United States, in violation of 21 U.S.C. §§§ 959. 960, and 963; and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h).

On June 11, 2020, the defendant pled guilty to Count III (money laundering conspiracy). The government agreed to dismiss the remaining counts.

Analysis of Sentencing Factors

A.   General Overview of Applicable Law

Even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220 (2005). "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall

3

consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in Section 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

18 U.S.C. § 3553 states that the Court should consider the nature and circumstances of the offense and the characteristics of the defendant. In addition, it states that the Court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). The sentence should also protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2)(C) & (D). The Court shall also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

B. <u>Sentencing Recommendation</u>

The United States agrees that the defendant's guideline range is correctly calculated at 70-87 months, and that the defendant is an "average participant," PSR at ¶ 36, in the criminal activity and should not be assessed a role enhancement. Nevertheless, the United States submits that a sentence of 87 months is appropriate. First, the defendant was no mere courier of money. He was entrusted with large quantities of money and communicated directly with the conspiracy's leader to effectuate the laundering process. Second, the defendant recruited others into this scheme by asking them pay back the seized money by writing checks to one of Mr. Li's fraudulent identities.

In making this recommendation, the United States is mindful that this Court recently

4

sentenced Xueyong Wu to 60 months' imprisonment. There, the United States recommended a variant sentence of 90 months. This Court determined that aspects of Mr. Wu's status as a non-citizen justified a variant sentence. But unlike Mr. Wu, the defendant is a naturalized American citizen. PSR at pg. 2. This means he will not be deported following his sentence and he will not be subject to further custody in advance of deportation. Furthermore, the defendant is eligible for programs during his confinement in the Bureau of Prisons that may help him to earn time off his sentence. Mr. Wu was not. When considered in conjunction with the specific offense characteristics, there is thus reason to distinguish between the defendant and Mr. Wu that weigh in favor the government's recommendation.

Conclusion

This offense requires a significant sentence. The defendant's activities facilitated the continuation of drug trafficking in the United States. This trade is responsible for parade of horribles with which this Court is well aware. Therefore, the government recommends this Court impose a sentence of 87 months of imprisonment. However, if this Court decides to impose a variant sentence, the government recommends that such sentence be no less than 60 months' imprisonment to avoid unwarranted sentencing disparities.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/ DAP_____
David A. Peters
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2020, I filed the foregoing with the Clerk of Court.

In addition, I hereby certify that on October 7, 2020, I emailed a copy of the foregoing to the following addresses:

Jennifer Lyerly
U.S. Probation Officer
10500 Battlefield Parkway, Suite 100
Manassas, Virginia 20109
Phone:  (703) 366-2141
E-mail:  Jennifer_Lyerly@vaep.uscourts.gov

Jeffery Zimmerman, Esq.
108 North Alfred Street
Alexandria, Virginia 22314
Phone:  703-548-8911
Email:  jzimmerman@jeffreyzimmerman.com

/s/
David A. Peters
Assistant United States Attorney
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  (703) 299-3700
Fax:    (703) 299-3980
E-mail:  david.peters@usdoj.gov